UNITED STATES BANKRUPTCY COURT                NOT FOR PUBLICATION
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
In re:                                         Chapter 7

OMAR SHARIF AMANAT,                            Case No. 04-43361

                         Debtor.

------------------------------------------------------------x
In re:                                         Chapter 11

MARKETXT, INC.,                                Case No. 05-14349

                         Debtor.

------------------------------------------------------------x

IIG CAPITAL LLC,

                         Plaintiffs,

    - against -

WOLLMUTH MAHER & DEUTSCH, LLP                  Adv. No. 05-01399 (ALG)

                       Defendants.
------------------------------------------------------------x

**MEMORANDUM OF OPINION**

A P P E A R A N C E S:

REISMAN, PEIREZ & REISMAN, L.L.P.
Attorneys for IIG Capital LLC, Plaintiff
    By: Jerome Reisman
       Joseph Capobianco
       Justin M. Vogel
1305 Franklin Avenue
PO Box 119
Garden City, New York 11530

WOLLMUTH MAHER & DEUTSCH LLP
Defendant pro se
      By: Paul R. DeFilippo
           William A. Maher
           William F. Dahill
500 Fifth Avenue, 12th Floor
New York, New York 10110

**ALLAN L. GROPPER**
**UNITED STATES BANKRUPTCY JUDGE**

      Before the Court is a motion by Plaintiff IIG Capital LLC ("IIG") for an order requiring the Court to abstain from hearing and remanding to the New York State Supreme Court, New York County (the "State Court") the above-captioned adversary proceeding, removed to this Court by Defendant, Wollmuth Maher & Deutsch, LLP ("WMD"). WMD asserts that this Court has jurisdiction to hear the IIG action and that IIG has not proven the elements for mandatory abstention, discretionary abstention or equitable remand. For the reasons set forth below, the motion is granted.

## FACTS

      The following facts are relevant and are determined for purposes of this motion only. MarketXT, Inc. ("MarketXT"), whose principal was Omar Amanat, was an electronic communications network for securities trading on the NASDAQ Stock Exchange. Archipelago Securities LLC and its affiliates ("Archipelago") and REDIBook ECN L.L.C., now apparently merged with Archipelago ("REDIBook"), were among MarketXT's customers.

      In 2002, MarketXT allegedly began factoring its accounts receivable and entered into a Factoring and Security Agreement dated July 16, 2002, with IIG, as amended by the First Amendment of Factoring and Security Agreement also dated July 16, 2002 (the "Factoring Agreement"). It is alleged that pursuant to the Factoring Agreement, IIG

2

would purchase certain accounts from MarketXT. IIG also allegedly received and perfected a first priority security interest in certain MarketXT collateral to secure obligations owed to it by MarketXT. It is claimed that at or about the date of the Factoring Agreement, Archipelago and REDIBook, two MarketXT accounts, owed MarketXT $4,085,024.75 and $3,031,086.73, respectively. IIG alleges that it informed Archipelago and REDIBook that MarketXT had assigned its present and future accounts to IIG and sent to Archipelago and REDIBook invoices providing an IIG mailing address for their future payments on the MarketXT debt.

On April 25, 2002, three months prior to the execution of the Factoring Agreement, MarketXT had commenced an arbitration proceeding against Archipelago and REDIBook before the National Association of Securities Dealers ("NASD") entitled *In the Matter of Market XT, Inc. v. Archipelago LLC and REDIBook ECN LLP*, NASD DR No. 02-2459 (the "Arbitration Proceeding"). The proceeding was to recover approximately $6.4 million in receivables. MarketXT had retained WMD to prosecute its claims in the Arbitration Proceeding on a contingency fee basis. IIG contends that it informed WMD by letter dated December 18, 2002, that IIG held an assignment of MarketXT's present and future accounts and that all proceeds collected from accounts should be paid to IIG as MarketXT's assignee.

On February 10, 2003, MarketXT and Archipelago settled the Arbitration Proceeding by executing a settlement agreement (the "Settlement Agreement"). MarketXT, by and through Amanat, warranted and represented in the Settlement Agreement that it had provided a complete list of all accounts assigned to any factor, that the Archipelago and REDIBook claims had not been assigned to a third party, that the

3

claims were property of MarketXT, Inc., that no third party claimed ownership thereto and that MarketXT had the authority to direct payment of the settlement proceeds. Archipelago represented and warranted that it could enter into the Settlement and Agreement and such action would not violate the rights of any third party. Archipelago paid a total of $3,101,866.39 in settlement proceeds, $640,144.25 of which was paid directly to WMD for its fees and $2,461,722.14 of which was paid to MarketXT.

Subsequent to the distribution of the settlement proceeds, a dispute broke out as to whether Amanat and MarketXT had any further liability to WMD. To induce WMD to accept payment of less than the full amount due to it, Amanat executed an Affidavit and Agreement on September 22, 2004 (the "Affidavit and Agreement"). In the Affidavit and Agreement, Amanat represented and warranted that (1) all the representations made in the Settlement Agreement were true, accurate and complete; (2) IIG had demanded proceeds from accounts to which it was not entitled under the Factoring Agreement; (3) no defaults or circumstances existed under the Factoring Agreement that would have prevented direct payment of the settlement proceeds to MarketXT; (4) MarketXT did not violate IIG's rights by directing distribution of the settlement proceeds in the manner directed by the Settlement Agreement; and (5) Amanat assured WMD personnel in writing of the above representations after reviewing the Factoring Agreement with the assistance of counsel.[1] Amanat also expressly agreed that WMD could assert a direct claim against him if any of the representations and warranties proved false.[2]

---

[1] The representations and warranties in full are as follows:
    5    . . . . In that Settlement Agreement, both [MarketXT] and I made certain representations to and for the benefit of Archipelago, to induce Archipelago to make payment of the settlement proceeds as provided in the agreement. I believed that all representations made by [MarketXT] and myself in the Settlement Agreement were true, accurate and complete in all material respects at the time they were made, and I have no reason to believe now that those representations were either false, inaccurate or omitted

4

An involuntary case was thereafter commenced against Amanat under Chapter 7 of the Bankruptcy Code, and the Court entered an order for relief on January 28, 2005. On February 8, 2005, IIG commenced the State Court action and asserted six state law causes of action against WMD, alleging that WMD was responsible for breach of

---

> any material facts. I hereby reaffirm under oath the truth of all of the representations made by both [MarketXT] and me in the Settlement Agreement. . . . WMD personnel working on the settlement insisted that I not sign the Settlement Agreement unless all of the representations made by [MarketXT] and me were true, accurate and complete in all material respects, since both WMD and Archipelago would be relying on [MarketXT's] power to direct payment of the settlement proceeds as provided in the agreement. It should be noted that the list of factored accounts attached as Exhibit A to the Settlement Agreement was created and prepared by [MarketXT], and was included to lend support to our representations to Archipelago that no factor, including IIG, had acquired the Archipelago account.
> 6. At no time prior to consummation of the Archipelago settlement, had IIG ever notified [MarketXT] that a default under the Factoring Agreement occurred or was continuing. In addition, at no time prior to the consummation of the Archipelago settlement did a default exist under the Factoring Agreement. There were no unsatisfied Obligations, as defined the Factoring Agreement, at the time of the Archipelago settlement. Based on my own review and consultation with [MarketXT] personnel and upon confirmation by Mr. Araneo, I concluded that the letters that IIG's counsel sent in December 2002 demanding payment of the proceeds of accounts which were not Purchased Accounts constituted demands for rights to which IIG was not entitled under the Factoring Agreement. Accordingly, I was comfortable directing that the Archipelago settlement proceeds be paid in the manner described in the Settlement Agreement. WMD was careful to insist that [MarketXT] assure the firm in writing, which we did, that there were no defaults or other circumstances under the Factoring Agreement which would preclude [MarketXT's] right to direct payment of the Archipelago settlement proceeds in accordance with the Settlement Agreement.
> 7. I did not believe at the time, and do not believe now, that [MarketXT] violated any rights of IIG in directing payment of the Archipelago settlement proceeds in the manner set forth in the Settlement Agreement.
> 8. I directed WMD that the Archipelago Settlement Agreement should provide that the net proceeds after payment of WMD's fee would go directly to [MarketXT]. WMD personnel asked for assurances that it was permissible under the Factoring Agreement for the proceeds to be paid to [MarketXT] and not to IIG, and after consultation with [MarketXT's] in house counsel, and review of the Factoring Agreement, I came to the conclusion that payment in that fashion was proper, and directed that the Settlement Agreement provide for such payment.

(Affidavit and Agreement at ¶¶ 5-8.)

[2] The language of the representation in full is the following:
> I understand that WMD is relying on the truth of the statements in this Affidavit in deciding whether to settle claims WMD has against [MarketXT] and me for less than the face amount of those claims. I hereby agree that if any of the foregoing statements made by me are untrue, or omit to state a material fact, that WMD may revoke any waivers or releases that inure to my personal benefit and seek to recover from me the difference between what WMD receives in any settlement and the full amount of WMD's claim. I hereby waive and agree not to assert the statute of limitations, laches or estoppel as a defense to any such action.

(Affidavit and Agreement at ¶ 9.)

5

fiduciary duties, impairment of a security interest, violation of an equitable lien, tortious interference with contractual relations, concealment and intentional disregard of the assignment of the accounts to IIG. All of these claims are based on New York law and New York's Attorney Disciplinary Rules. On March 9, 2005, WMD filed a contingent, unliquidated proof of claim against the Amanat estate based on Amanat's alleged potential liability to WMD for indemnification based on the representations in the Affidavit and Agreement. WMD then, on March 10, 2005, removed the State Court action to this Court.[3] On April 22, 2005, IIG moved to remand the action back to State Court.

MarketXT subsequently commenced a voluntary case under Chapter 11 of the Bankruptcy Code, and the Court entered an order for relief on June 15, 2005. WMD filed a supplemental removal petition on July 5, 2005 based on the MarketXT case, and IIG moved to remand the supplemental petition on August 5, 2005. WMD alleges that it will file a contingent, unliquidated proof of claim prior to MarketXT's bar date, based on MarketXT's alleged potential liability to WMD for indemnification as a result of the representations and warranties made by MarketXT in the Settlement Agreement.[4]

### DISCUSSION

### I. The Court Has "Related To" Jurisdiction over the IIG Action

Under 28 U.S.C. § 1334, district courts have original but not exclusive jurisdiction over all civil proceedings arising under, arising in or related to cases under title 11, which they have referred to the bankruptcy judges for this district. Actions

---

[3] IIG claims that WMD removed the State Court action on March 9, 2005. (See Aff. in Supp. of IIG's Mot. to Remand to State Ct. Action, or Abstain at 2.)

[4] WMD has already filed two proofs of claim against MarketXT Holdings Corp., the parent corporation of MarketXT, which is in its own Chapter 11 case.

6

arising under title 11 involve claims "predicated on a right created by a provision of title 11." *Drexel Burnham Lambert Group, Inc. v. Vigilant Ins. Co.*, 130 B. R. 405, 407 (S.D.N.Y. 1991). Actions arising in title 11 involve claims that are not based "on any right expressly created by title 11, but nevertheless, would have no existence outside of bankruptcy." *Id*. at 407. Actions "related to" a case under title 11 involve claims whose outcomes "could conceivably have any effect on the estate being administered in bankruptcy." *Id*. The Second Circuit's test "for determining whether litigation has a significant connection with a pending bankruptcy proceeding is whether its outcome might have any 'conceivable effect' on the bankrupt estate." *Publicker Indus. Inc. v. United States (In re Cuyahoga Equip.)*, 980 F.2d 110, 114 (2d Cir. 1992), citing *Pacor, Inc. v. Higgins*, 743 F.2d 338, 340-41 (3d Cir. 1983).

      Many cases have held that a bankruptcy court has "related to" jurisdiction over non-debtor litigation if the estate is obligated to indemnify or contribute to the losing party. See, e.g., *New York City Employees' Ret. Sys. v. Ebers (In re Worldcom, Inc. Sec. Litig.)*, 293 B.R. 308, 324 (S.D.N.Y. 2003) (court held that a contribution claim could conceivably affect the bankruptcy estate because it could alter the distribution of assets among creditors); *Bond St. Assocs. v. Ames Dep't. Stores, Inc.*, 174 B.R. 28, 33 (S.D.N.Y. 1994) (court found reasonable basis for jurisdiction absent an indemnification agreement where the third-party defendant would "normally have a claim" for indemnification against the debtor); *In re Masterwear Corp.*, 241 B.R. 511, 516-17 (Bankr. S.D.N.Y. 1999) (court held that third-party action involving indemnification claim could conceivably affect the Debtor). A court has "related to" jurisdiction over a contractual and absolute obligation to indemnify even if the debtor's liability is not

7

definite. See *Hunnicut Co. v. TJX Cos. (In re Ames Dep't Stores, Inc.)*, 190 B.R. 157, 160-61 (S.D.N.Y. 1995); *In re Brentano's Inc.*, 27 B.R. 90, 92 (Bankr. S.D.N.Y. 1983), rev'd and remanded on other grounds, 36 B.R. 90 (S.D.N.Y. 1984); *Kelley v. Nodine (In re Salem Mortgage Co.)*, 783 F.2d 626, 634 (6th Cir. 1986). A court also has "related to" jurisdiction over a disputed or conditional obligation to indemnify that has a "reasonable legal basis." *In re Worldcom, Inc. Sec. Litig.*, 293 B.R. at 317.

An express contract or an implied obligation can give rise to the right to indemnification. *Luedke v. Delta Air Lines, Inc.*, 159 B.R. 385, 389 (S.D.N.Y. 1993), quoting *Bellevue S. Assocs. v. HRH Constr. Corp.*, 78 N.Y.2d 282, 296, 574 N.Y.S.2d 165, 171, 579 N.E.2d 195, 201 (1991). Implied indemnification is a restitution concept that "'permits shifting the loss because to fail to do so would result in the unjust enrichment of one party at the expense of the other.'" *Id*. at 389, quoting *Mas v. Two Bridges Assocs.*, 75 N.Y.2d 680, 690, 555 N.Y.S.2d 669, 674, 554 N.E.2d 1257, 1262 (1990). Implied indemnification claims may rest on several grounds, such as a "separate duty owed the indemnitee by the indemnitor" or when "one of two parties is considered actively negligent or the primary or principal wrongdoer." *Id*. at 389, quoting *Bellevue S. Assocs.*, 78 N.Y.2d at 296, 574 N.Y.S.2d at 171, 579 N.E.2d at 201.

The outcome of the IIG Action would have a conceivable effect on one or both bankruptcy estates if WMD loses the suit with IIG and Amanat or MarketXT is obligated to indemnify WMD.[5] IIG asserts that WMD has no claim of implied indemnity against MarketXT or Amanat because WMD allegedly knew about IIG's claim to the Settlement

---

[5] IIG's reliance on predominantly Third Circuit authority in arguing that "related to" jurisdiction is precluded where a later lawsuit is necessary to determine the estate's indemnification liability to the losing party is also misplaced. See *In re Worldcom, Inc. Sec. Litig.*, 293 B.R. at 319-20 (distinguishing the Third Circuit decision in *In re Federal-Mogul Global, Inc.*, 300 F.3d 368, 382 (3d Cir. 2002) from Second Circuit, Fifth Circuit, Sixth Circuit and Fourth Circuit precedents).

8

Proceeds and failed to turn over the funds to IIG. The Court does not need to decide the issue of WMD's indemnity rights at this time, but WMD has raised a credible issue and colorable claim that it relied on Amanat and MarketXT's assurances before it acted in accordance with the Settlement Agreement. In any event, the original responsibility to IIG was arguably that of MarketXT-- a liability that presumably arose out of the sale of receivables. WMD has asserted a colorable claim to indemnification over which this Court has "related to" jurisdiction.[6]

Even though the Court has jurisdiction over the removed action, that jurisdiction is only based on the "related to" jurisdiction of 28 U.S.C. § 1334. WMD has not provided any basis for a finding that the IIG action "arises under" or "arises in" the title 11 case. "Related to" jurisdiction is presumptively non-core jurisdiction. See *Cooper v. Ins. Co. of Pennsylvania (In re Ben Cooper)*, 924 F.2d 36, 38 (2d Cir. 1991); see also *In re Masterwear Corp.*, 241 B.R. at 514. WMD argues that the IIG action should be considered core because its indemnification claim would be so large as to have a major impact on the claims allowance process, the debtor-creditor relationship and the liquidation of assets in the MarketXT and Amanat cases. Although cases have found certain proceedings to be core based on their overall impact on the estate, e.g., *United States Lines, Inc. v. Am. S.S. Owners Mut. Prot. & Indem. Assoc., Inc. (In re United States Lines, Inc.)*, 197 F.3d 631 (2d Cir. 1999), there is no authority that a party with a contingent claim for indemnification can bootstrap its claim onto the Bankruptcy Court's core jurisdiction. In any event, WMD's potential claim, although large, is not of the type to overwhelm the rights of other creditors or dominate the case.

---

[6] Because the Court has jurisdiction over the IIG Action through WMD's colorable indemnification claim against Amanat and MarketXT, there is no need to address whether WMD also has a contribution claim against Amanat and MarketXT.

9

Since WMD's claim is based only on the Court's "related to" jurisdiction and is non-core, the provisions of 28 U.S.C. § 1334(c)(2) providing for mandatory abstention are directly applicable.

**II. The Court Must Abstain Mandatorily from This Action**

28 U.S.C. § 1334(c)(2) provides:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced and can be timely adjudicated in a State forum of appropriate jurisdiction.

Courts have found that mandatory abstention is required if the following six factors are present: (1) the motion to abstain was timely made; (2) the action is based on a state law claim; (3) the action is "related to" but not "arising in" a bankruptcy case or "arising under" the Bankruptcy Code; (4) § 1334 provides the sole basis for federal jurisdiction; (5) an action was commenced in state court; and (6) that action can be "timely adjudicated" in state court. *In re Worldcom, Inc. Sec. Litig.*, 293 B.R. at 331; *In re Adelphia Communications Corp.*, 285 B.R. 127, 141 (Bankr. S.D.N.Y. 2002). Mandatory abstention is not required if the party seeking mandatory abstention fails to prove any one of the statutory requirements. *In re Worldcom, Inc. Sec. Litig.*, 293 B.R. at 331; *In re Adelphia Communications Corp.*, 285 B.R. at 143-44.

Here, there is no dispute that factors one, two, four and five are satisfied. The motion to abstain was timely made.[7] The IIG Action is comprised of six causes of action

---

[7] In WMD's Opposition to IIG's Supplemental Motion to Remand the Verified Complaint, WMD argues that the motion to abstain was not timely brought under 28 U.S.C. § 1447(c) because it was filed more than thirty days after the filing of the petition. This Court, however, specifically authorized the filing of the motion by August 5, 2005. WMD also cites no authority to support its proposition that the motion to

10

based on New York law, specifically contract law principles and violations of New York's Attorney Disciplinary Rules. Section 1334 is the sole basis for federal jurisdiction because complete diversity is lacking and IIG has not alleged federal question jurisdiction in its complaint. Finally, there is no longer an issue in the Second Circuit that a lawsuit was "commenced" and can be adjudicated in State Court under 28 U.S.C. § 1334(c)(2) even if the lawsuit was removed to federal court, provided that the suit can be remanded. *Mt. McKinley Ins. Co. v. Corning Inc.*, 399 F.3d 436, 446-47 (2d Cir. 2005) (mandatory abstention applies to a removed action).

WMD contends that factors three and six have not been satisfied. We deal above with factor three and demonstrate that the IIG Action is not a proceeding "arising in" a bankruptcy case or "arising under" the Bankruptcy Code, and is merely a "related to" proceeding. Therefore, factor three has been satisfied.

The final factor is whether the case can be timely adjudicated in State Court. IIG asserts that the IIG Action involves six causes of action based exclusively on New York State law, and that the action will likely be assigned to the Commercial Division of the Supreme Court, where cases move on a fast-track basis. WMD responds that bald assertions that the State Court action would likely move quickly and efficiently are legally insufficient to satisfy the requirements for mandatory abstention, citing *In re Worldcom, Inc. Sec. Litig.*, 293 B.R. at 331. WMD asserts that a remand to State Court of the IIG Action would risk duplication of effort, inconsistent rulings, and a substantial

---

abstain was not timely made because IIG failed to file a statement pursuant to Fed. R. Bankr. P. 9027(e)(3), in which IIG (i) admitted or denied any allegation in the notice of removal that "upon removal of the claim or cause of action the proceeding is non-core," and (ii) stated whether it consents to entry of final orders of judgments by the bankruptcy judge, in the event that the statement alleged that the proceeding was non-core. The motion to abstain was timely made and the first factor for mandatory abstention has been satisfied.

11

delay in the administration and conclusion of the Amanat and MarketXT bankruptcy proceedings.

There has been no sufficient showing that the State Court action cannot move as quickly as necessary in the context of the bankruptcy proceedings. Considering timeliness in the context of bankruptcy case administration, it is important that the two cases here are related to the MarketXT Holdings Corp. case, which includes litigation that is not expected to be resolved for many years. Further, this case is not like *In re Worldcom, Inc. Sec. Litig.*, where the court held that mandatory abstention was not appropriate due to the size of the bankruptcy, the complexity of the litigation and the close connections between the defendants in the action and the debtor. Even if the bankruptcy cases conclude before the IIG Action is decided in the State Court, the Amanat and MarketXT estates can provide for an appropriate contingency.

Further, it is also telling that IIG has an action against Archipelago pending in State Court that involves many of the same issues as the IIG Action against WMD. The Archipelago action has not been removed to this Court, despite the fact that Archipelago has filed proofs of claim against the MarketXT estate based on the issues raised in the action. It seems appropriate that the IIG Action against WMD be in the same forum as IIG's claims against Archipelago, if only so that court could consider issues such as consolidation of the two related cases.

As IIG has satisfied all of the factors for mandatory abstention, the Court will grant IIG's motion to abstain. It will accordingly also enter an order remanding the IIG Action back to State Court.[8]

---

[8] Because the Court finds that it must abstain mandatorily and remand the case back to State Court, no further discussion is necessary as to discretionary abstention or equitable remand.

12

**III. The Court Will Not Award IIG Costs and Expenses, Including Attorney's Fees**

IIG requests an award of IIG's costs and expenses, including attorney's fees pursuant to 28 U.S.C. § 1447(c). This section provides that "an order remanding the case may require payment of just costs and any actual expenses, including attorney fees incurred as a result of the removal." 28 U.S.C. § 1447(c). The Supreme Court this month in *Martin v. Franklin Capital Corp.*, --- S.Ct. ----, 2005 WL 3299410 (Dec. 7, 2005), set forth the standards for determining a motion under § 1447(c). It held that "absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Martin*, --- S.Ct. ----, 2005 WL 3299410, at *6. Trial courts retain "discretion to consider whether unusual circumstances warrant a departure from the rule in a given case" but the court's reasons for departing from the general rule should be "faithful to the purposes of awarding fees under § 1447(c)." *Id*. at *6.

In this case, WMD had an objectively reasonable basis for seeking removal as evidenced by the Court finding "related to" jurisdiction over the IIG Action. No unusual circumstances exist warranting a departure from the general rule that fees are not shifted. Therefore, IIG's request for costs and expenses, including attorney's fees, is denied.

13

**CONCLUSION**

For the reasons set forth above, the Court grants IIG's motion to abstain and accordingly remands the IIG Action to the State Court, but denies IIG's request for costs and expenses, including attorney's fees. IIG shall settle an order on five days' notice.

Dated: New York, New York
December 15, 2005

*/s/ Allan L. Gropper*
UNITED STATES BANKRUPTCY JUDGE